NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RANDY WASHINGTON, <br><br> Plaintiff, <br><br> v. <br><br> CHARLES ELLIS, et al., <br><br> Defendants. | Civ. No. 17-7243 (PGS-TJB) <br><br><br> MEMORANDUM |

**PETER G. SHERIDAN, U.S.D.J.**

This matter comes before the Court on a motion for summary judgment filed by Defendants Charles Ellis, Timothy Friel, and Tamaine Grier. (ECF No. 40). Plaintiff Randy Washington opposes the motion. (ECF No. 64). For the following reasons, the motion is denied.

**I.**

Petitioner is currently incarcerated in New Jersey State Prison ("NJSP"), Trenton, New Jersey. According to the amended complaint, Plaintiff hit his attorney in the Mercer County Courthouse on June 29, 2017. (ECF No. 38 at 6). He waited to be handcuffed but was instead tackled by law enforcement officers. He alleges they slammed him onto the ground, breaking a bone in his hand. (*Id.*). He was taken out of the courtroom in handcuffs and thrown up against the wall. One of the sheriffs kept tightening the handcuffs and "twisting and jerking [his] hand up to [his] back" in order to inflict pain on Plaintiff in retaliation for assaulting his public defender. (*Id.*). Plaintiff states this was caught on the courthouse cameras. (*Id.*).

Upon arriving back at the Mercer County Correctional Center ("MCCC"), Plaintiff asked to go to the hospital and was told to wait for Sergeant Friel. (*Id.* at 7). When Sergeant Friel arrived, Plaintiff told Sergeant Friel that he needed to go to the hospital for his injured hand. (*Id.*). Sergeant Friel took Plaintiff to the nurse but told Plaintiff that they did "not send inmates to the hospital anymore we can give you ice." (*Id.*). When Plaintiff tried to tell Sergeant Friel that ice would not help because his hand was broken, Sergeant Friel told Plaintiff that he was refusing medical care and took Plaintiff back to his cell. (*Id.*).

Plaintiff asked Sergeant Grier to take him to the hospital, but she said that Sergeant Friel had said Plaintiff refused medical care. (*Id.* at 8). Plaintiff clarified that he only refused the ice and wanted treatment for his broken hand. (*Id.*). Sergeant Grier took Plaintiff back to the nurse for ice. When Plaintiff tried to ask the nurse for help, Sergeant Grier interrupted and indicated that Plaintiff "was not going to the Hospital." (*Id.*). Plaintiff did not receive any pain medication for his hand. (*Id.*).

Plaintiff alleges Warden Charles Ellis knew all about his injury and the failure to provide medical attention but did nothing. He states the deputy warden told him in Ellis' presence to get an x-ray on June 30, 2017. (*Id.* at 9). An x-ray taken of Plaintiff's hand on July 6, 2017 confirmed it was broken.

Plaintiff filed his original complaint on September 19, 2017. (ECF No. 1). The Court originally denied his *in forma pauperis* application and administratively terminated the complaint. (ECF No. 2). Plaintiff submitted a new application, which the Court granted. (ECF Nos. 7 & 8). It screened his complaint under 28 U.S.C. § 1915 and proceeded it in part. (ECF No. 11). Plaintiff filed his amended complaint with leave of court on December 26, 2018. (ECF No. 38).

Defendants Charles Ellis, Timothy Friel, and Tamaine Grier now move for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies before filing suit. (ECF No. 40). The Court issued a *Paladino* notice informing the parties that it may resolve factual issues regarding exhaustion as part of the summary judgment motion on March 18, 2019. (ECF No. 54). The order also permitted the parties to submit any additional evidence.

The matter is now ripe for decision.

## II.

Under the Federal Rules of Civil Procedure, "[s]ummary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.' In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (quoting Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.

The sole issue before the Court is whether Defendants are entitled to judgment as a matter of law based on their argument that Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. Under the Prison Litigation Reform Act, ("PLRA"), prisoners must exhaust 'such administrative remedies as are available' before bringing suit to challenge prison

conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Id.* at 1856 (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2007)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This includes constitutional claims, *Woodford*, 548 U.S. at 91 n.2, and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion must be proper, meaning "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). "A prisoner must exhaust these remedies 'in the literal sense[;]' no further avenues in the prison's grievance process should be available." *Smith v. Lagana*, 574 F. App'x 130, 131 (3d Cir. 2014) (quoting *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004)).

"Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013). A district court may decide whether plaintiffs exhausted their administrative remedies without a jury even if there are disputed facts after providing notice to the parties and an opportunity to submit further evidence. *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018); *Small*, 728 F.3d at 270. The Court issued a notice and order providing the parties additional time to submit materials on March 18, 2019. (ECF No. 54). Plaintiff submitted additional materials.

(*See, e.g.,* ECF Nos. 66, 75, 76). Defendants responded to Plaintiff's materials but did not submitted any additional materials of their own. (ECF Nos. 67, 74).

Both parties have submitted copies of grievances wherein Plaintiff alleges he was denied medical treatment for his hand. (ECF No. 40-2 at 14-16; ECF No. 75). For example, Plaintiff wrote in a grievance filed on August 22, 2017:

> On 6-29-17 I come in from the courthouse at 5 or 6 pm my hand was broken. I ask Sgt. T. Friel I need to go to the Hospital. Sgt. Friel take me to see the nurse Rita. I told Her I need to go to Hospital. Sgt. Griel said we don't do that anymore. We can give you Ice. I said what is ice gonna do for a broken hand. He said to the nurse He refuse Yeah Ice. [sic]. Sgt. Grier I need to go to the Hospital. She said they said I refuse I told her Ice my hand is broken.
>
> On 8-17-17 I said to Sgt. Friel you gonna be the fall guy I'm suing the Jail for not taking me to the Hospital. He then said Did not say we don't take inmates I said I don't think we take inmate no more to Hospital. He just [not] did want me to go cause of what Happen or Lt. Zegarski Lt. Lyszczak.

(ECF No. 75 at 2). Each section is competed by a prison official. (*Id.*). Warden Ellis issued the final response on September 1, 2017: "See above response from Medical." (*Id.*). Plaintiff filed another grievance in late August 2017 directed to Deputy Warden Oliver. (ECF No. 40-2 at 16). Warden Ellis' September 11, 2017 response is illegible. (*Id.*). Another grievance dated September 13, 2017 asked Warden Ellis about the lack of medical care and failure to take Plaintiff to the hospital (*Id.* at 15). Warden Ellis' response is illegible. (*Id.*).

Warden Ellis certified that "[t]he grievance process at MCCC has both internal and external components." (ECF No. 40-2 at 3 ¶ 7). The Court concludes that Plaintiff completed the internal grievances regarding the claims alleged in the complaint; the question is whether Petitioner was required to appeal Warden Ellis' decision.

According to Warden Ellis' certification, "[i]mates who have availed themselves of the institutional procedures and who are still unstratified are *directed* to appeal their issue to the

County Administration and/or the State." (*Id.* ¶ 8) (emphasis added). However, under the "Grievance Procedure" heading in the MCCC Handbook it states "[i]n cases where you have used these institutional procedures and you are dissatisfied with the decision, you *may* then address your problem directly to the Director of Public Safety." (ECF No. 40-2 at 6) (emphasis added). "We expect that you will be able to resolve your problem through Department channels. However, if you want to pursue the issue further, you *may* contact your attorney *or* the Office of the Inmate Advocacy." (*Id.*) (emphasis added). This language is ambiguous and does not clearly indicate that inmates must take these additional steps in order to have their administrative remedies considered exhausted.

Primarily, the Handbook's language appears to be permissive rather than mandatory. The remedy form itself appears to indicate that the grievance is considered resolved at Step Four, which is completed by the Deputy Warden. (ECF No. 40-2 at 8 ("The canary copy is to be forwarded to the Hearing/Grievance Officer to file in the inmate's records/classification file *at the resolution of the grievance* at Step One through Step Four.") (emphasis added)). Defendants have offered no evidence regarding whether inmates are given additional instructions on the alleged requirement to escalate Warden Ellis' response to the County and State before filing suit in federal court.

Secondly, there is no language in the Handbook that requires inmates to go first to the Director of Public Safety and then escalate the Director's response to the Office of the Inmate Advocacy (*Id.* at 6). The offices are presented as two separate options for further review, not as steps to follow for exhaustion. Moreover, the choice given to inmates to contact an attorney in lieu of the Office of the Inmate Advocacy suggests that step is not required.

Finally, it would be impossible for Plaintiff to write to the Office of the Inmate Advocacy as that office was abolished in 1994. Public Advocate Restructuring Act of 1994, 1994 NJ Sess. Law Serv. Ch. 58 (ASSEMBLY 15) (West). Its litigation responsibilities that were pending at the time were assumed by the Office of the Public Defender, N.J.S.A. § 2A:158A-7(n), but there is no evidence in the record or in the statutory text that the Public Defender assumed the Inmate Advocate's ability to resolve prison administration disputes. "[T]he exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (quoting 42 U.S.C. § 1997e(a)) (alteration in original). Inmates cannot be expected to direct complaints to a state office that has been defunct for twenty-five years.

The Court reads the Handbook as requiring inmates to complete the internal prison procedures. It then gives them the option of addressing their concerns with Mercer County or the State if they are unsatisfied with the warden's response, but those steps are not required by the Handbook in order to exhaust administrative remedies. The Court finds that Plaintiff exhausted all the available remedies at MCCC before filing his federal lawsuit. Defendants are not entitled to judgment as a matter of law on their exhaustion argument.

## V.

For the reasons stated above, Defendants' summary judgment motion is denied. An appropriate order follows.

DATED: 9/18/19, 2019

PETER G. SHERIDAN
United States District Judge

7